#24134-rev & rem-SLZ
**2007 SD 28**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA
\* \* \* \*

JACE JENSEN,                                             Petitioner and Appellant,

    v.

TURNER COUNTY BOARD OF
ADJUSTMENT, JERRY GRABER,
KEN PLUCKER, JR., RALPH
DUXBURY, RICHARD LOUNSBERY,
and RYAN WIEMAN,                                 Respondents and Appellees,
        and
ET FARMS, LTD.,                                      Intervenor.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
TURNER COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE LEE D. ANDERSON
Judge
\* \* \* \*

JACK DER HAGOPIAN
JAMES G. ABOUREZK of
Abourezk Law Offices                              Attorneys for petitioner
Sioux Falls, South Dakota                         and appellant.

TIFFANI LANDEEN-HOEKE
Turner County State's Attorney
Parker, South Dakota                               Attorney for appellee.

BRIAN DONAHOE
MEREDITH MOORE of
Cutler & Donahoe, LLP                             Attorneys for intervenor
Sioux Falls, South Dakota                         ET Farms, Ltd.

\* \* \* \*

CONSIDERED ON BRIEFS
ON JANUARY 8, 2007

OPINION FILED **03/14/07**

#24134

ZINTER, Justice

[¶1.]        Jace Jensen appeals a decision of the Turner County Board of Adjustment (Board) granting a conditional use permit for a hog confinement facility. Jensen contends that the Board vote was illegal because less than two-thirds of the members of the Board voted to approve the permit.  We agree and reverse.

## Facts and Procedural History

[¶2.]        The Board consisted of five members plus one alternate.  *See* SDCL 11-2-50.[1]  Two members did not cast affirmative or negative votes on the permit.  The record is inadequate to determine precisely why  they did not vote.[2]  The briefs indicate that the acting chairman (a regular member) abstained due to a Board

---

1.      SDCL 11-2-50 provides in part: "A board of adjustment. . .consists of five members. . . The appointing authority may also appoint a first alternate and a second alternate. . . ."

2.      The briefs are contradictory with respect to who was absent, who was present but did not vote, and the precise reason for not voting.  Jensen's brief indicates that Ralph Duxbury was the Board chairman and he did not vote because of a conflict of interest.  Jensen's brief further indicates that Ryan Wieman was the acting chair and he abstained due to custom.  Jensen does not mention the alternate. The Board's brief indicates that the presiding officer (presumably referring to Wieman, the acting chair) did not vote.  The Board's brief further indicates that Duxbury was at the meeting but did not "participate."  The Board's brief finally indicates that the alternate was absent from the meeting due to a personal conflict.

In some cases, the presence or absence of members and the reasons for not voting are relevant to determining the validity of the vote.  In light of this record, we decide this case with the understanding that only three affirmative votes were cast in favor of the application, with one additional member abstaining.

-1-

#24134

custom that the chair only voted in case of a tie.[3]  The Board ultimately granted ET

Farms, Ltd. a conditional use permit by a vote of three to zero.

[¶3.]        Jensen challenged the Board's decision by seeking a writ of certiorari

in circuit court.  The circuit court dismissed, ruling that although SDCL 11-2-59

required a two-thirds vote, the statute did not apply to votes on conditional use

permits; that if the statute did apply, the required two-thirds vote only applied to

the Board members who were present and voting; or alternatively, that a Turner

County ordinance, which only required a majority vote, controlled.[4]  Jensen appeals

raising two issues:

> 1.  Whether SDCL 11-2-59 applies to the approval of conditional
>     use permits by a board of adjustment.
>
> 2.  If SDCL 11-2-59 applies, whether it requires the affirmative
>     vote of two-thirds of the total membership of a board of
>     adjustment to grant a conditional use permit.

**Standard of Review**

[¶4.]        Appeals from boards of adjustment are considered by circuit courts

under writs of certiorari, and therefore, judicial review is limited.  Elliott v. Board of

County Commissioners of Lake County, 2005 SD 92, ¶¶13-14, 703 NW2d 361, 367

(quoting SDCL 11-2-61 and SDCL 21-31-8; citing SDCL 11-2-62).  Our review is also

limited:

> Our consideration of a matter presented on certiorari is limited
> to whether the board of adjustment had jurisdiction over the

---

3.    We have not been pointed to any statute or ordinance under which the Board
      chair may only vote in case of a tie.

4.    Because we ultimately conclude that SDCL 11-2-59 controls, we do not
      examine the county ordinance.

> matter and whether it pursued in a regular manner the authority conferred upon it. A board's actions will be sustained unless it did some act forbidden by law or neglected to do some act required by law.

*Id.* at ¶14 (quoting Hines v. Board of Adjustment of City of Miller, 2004 SD 13, ¶10, 675 NW2d 231, 234).

## Decision

[¶5.]     Jensen argues that although conditional use permits are not specifically mentioned in SDCL 11-2-59, the statute requires a board of adjustment to approve applications for permits by a two-thirds vote. On the other hand, the Board points to legislative history reflecting that at one time the statute specifically referred to the approval of "conditional use permits," but that reference was repealed.[5] While repeal of such specific language would normally tend to suggest

---

5.     In 2000, SDCL 11-2-59 provided:

> The concurring vote of two-thirds of the members of the board of adjustment is necessary to reverse any order, requirement, decision, or determination of any such administrative official, or to decide in favor of the applicant on any matter upon which it is required to pass under any such ordinance, or to effect any variation in the ordinance.

In 2003, the statute was amended to read:

> The concurring vote of two-thirds of the members of the board of adjustment is necessary to reverse any order, requirement, decision, or determination of any such administrative official, or to decide in favor of the applicant on any matter upon which it is required to pass under any such ordinance, or to effect any variation *or conditional use* in the ordinance.

2003 SL, ch 78, §4 (emphasis in original).
In 2004, the language "or conditional use" was repealed, making the statute the same as it was in 2000. *See* 2004 SL, ch 101, §4.

that conditional permits were no longer governed by the statute, we do not resort to statutory construction through legislative history. "[R]esorting to legislative history is justified only when legislation is ambiguous, or its literal meaning is absurd or unreasonable. Absent these circumstances, we must give legislation its plain meaning." Petition of Famous Brands, Inc., 347 NW2d 882, 885 (SD 1984) (citations omitted).

[¶6.] In this case, the literal language of the statute is not absurd, unreasonable, or ambiguous. It plainly required a two-thirds vote for any applicant on *any matter* upon which the Board was required to pass.

> The concurring vote of two-thirds of the members of the board of adjustment is necessary to reverse any order, requirement, decision, or determination of any such administrative official, *or* to decide in favor of the applicant *on any matter upon which it is required to pass under any such ordinance*, or to effect any variation in the ordinance.

SDCL 11-2-59 (emphasis added).[6] In this case, Turner County Ordinance 3.01.11 required the Board to approve or deny applications for conditional use permits. Because ET Farms, Ltd.'s application was a matter upon which the Board was required to pass, SDCL 11-2-59 applied, and it required a two-thirds concurring vote for approval.

[¶7.] Having decided that the statute is applicable, we must next determine the meaning of the phrase the concurring vote of two-thirds "of the members of the

---

6. Although the County argues that SDCL 11-2-59 only required a two-thirds vote when a board was exercising its appellate jurisdiction, the emphasized language clearly reflects that the two-thirds vote was also required when a board was exercising its original jurisdiction to hear initial applications for conditional use permits.

board." Jensen contends that this language required a two-thirds vote of all members of the Board. The Board argues that the language only required a two-thirds vote of the members of the Board who were present and voting.

[¶8.]         We believe the language "the members of the board" required a two-thirds vote of all members of the Board. The Legislature, in other contexts, has clearly revealed its ability to allow a specified vote of the "members present" when it so intended.[7] Therefore, had the Legislature intended in SDCL 11-2-59 to only require a two-thirds concurrence of the members present and voting, it would have said so. Furthermore, the Board's contrary interpretation would require us to read the additional language "members present" into the statute, something we cannot do:

> While it is fundamental that we must strive to ascertain the real intention of the lawmakers, it is equally fundamental that we must confine ourselves to the intention as expressed in the language used. *Ex parte Brown,* 21 SD 515, 519, 114 NW 303, 305 (1907). To violate the rule against supplying omitted language would be to add voluntarily unlimited hazard to the already inexact and uncertain business of searching for legislative intent. *Boehrs v. Dewey County,* 74 SD 75, 79, 48

---

7.     *See* SDCL 1-25-2 (providing: "An executive or closed meeting shall be held only upon a majority vote of the members of such body present and voting"); SDCL 1-40-17(providing: "A majority of the appointed members of the Water Management Board shall constitute a quorum. A majority of those present and voting shall be sufficient to perform official functions of the board."); SDCL 2-15-14 (providing: "When the convention shall have agreed by a vote of a majority of the total number of delegates present and voting. . ."); Rules of the South Dakota Legislature, Joint Rule, 4-1(Eighty-First session, 2006)(providing: "To revert to an old order of business or to pass to a new order of business requires a majority vote of the members present"); Rules of the South Dakota Legislature, Joint Rule, 5-2.2 (2006)(providing: "a motion. . .may not be withdrawn without unanimous consent of the members present.").

NW2d 831, 834 (1951).

*Petition of Famous Brands*, 347 NW2d at 885. We therefore conclude that SDCL 11-2-59 required a two-thirds vote of the entire membership of the Board.

[¶9.] We must finally determine whether there was a concurring vote of "two-thirds" of the membership. Because the Board was composed of five members, a two-thirds concurrence required four votes.[8] Although this vote was unanimous, only three affirmative votes were cast. This leaves the question of the legal effect of the abstention.[9]

[¶10.] The Board argues that we should adopt the common-law rule that abstentions are counted as an acquiescence to the majority of votes actually cast. Many cases describe the origin of this rule:

> The common-law rule regarding abstentions evolved from a rule pertaining to elections announced by Lord Mansfield in *Rex v. Foxcroft,* 2 Burr 1017, 1021, 97 EngRep 683 (1760): "Whenever electors are present, and don't vote at all, (as they have done here,) 'They virtually acquiesce in the election made by those who do.'" *Rex v. Foxcroft* concerned the appointment of the town clerk of Nottingham by the mayor, alderman, and common council. Of the 25 electors, 21 were present, nine voted in favor of the appointment, and 12 refused to vote. Numerous subsequent cases interpreted this language to mean that those who refuse to vote, or abstainers, are to be counted as voting

---

8.   *See* 4 Eugene McQuillin, *The Law of Municipal Corporations*, §13.31.10 (3rd ed rev 2002):

>    If the required percentage of the members of a legislative body consists of a certain number of whole votes and a fraction, it is necessary to count the fraction as a whole vote even though the result is a greater percentage of the body than would be the case if the legislative body were equally divisible by such percentage into whole numbers.

9.   We only consider the effect of the abstention due to custom. We do not consider the legal effect of a failure to vote because of conflicts of interest.

> with the majority. See Annot., 63 ALR3d 1064, and cases cited
> therein. See generally 4 McQuillin on Municipal Corporations §
> 13.32 (3d ed rev 1985).

City of Haven v. Gregg, 244 Kan 117, 120, 766 P2d 143, 145 (1988). *See also* Prosser v. Village of Fox Lake, 91 Ill2d 389, 392-398, 438 NE2d 134, 134-136 (1982) (holding that when law requires "the concurrence of a majority of all members then holding office," a failure to vote counts with the majority); City of Springfield v. Haydon, 216 Ky 483, 288 SW 337, 341 (KyApp 1926) (noting that "[i]t is immaterial that two members did not vote. They were present, and are counted as acquiescing in what was done when they did not vote in the negative."); Pierson-Trapp Co. v. Knippenberg, 387 SW2d 587, 588 (KyApp 1965) (stating rule that "when a quorum. . . is present those members who are present and do not vote will be considered as acquiescing with the majority."); Murdoch v. Strange, 99 Md 89, 57 A 628 (MdApp 1904) (holding that abstentions are counted with the majority even if only a minority actually vote); Northwestern Bell Telephone Co. v. Board of Commissioners of the City of Fargo, 211 NW2d 399, 401, 404 (ND 1973) (concluding that "a passed vote is to be considered as a vote with the majority" when statute requires that "a majority of all of the members of the governing body must concur in the passage"); A&H Services, Inc. v. City of Wahpeton, 514 NW2d 855, 859 (ND 1994)(same).

[¶11.]     However, we decline to follow these cases because SDCL 11-2-59 abrogated the common-law rule. "In this state the rules of the common law. . . are in force, except where they conflict with the will of the sovereign power, expressed in the manner stated in § 1-1-23." SDCL 1-1-24. And, under SDCL 1-1-23, "[t]he

will of the sovereign power is expressed. . .(5) By statutes enacted by the Legislature[.]"

[¶12.] Unlike most of the statutes under which the common-law rule has been applied, SDCL 11-2-59 required a "concurring *vote* of two-thirds of the members of the board." The use of the word "vote" must have meaning. "When we interpret a statute, '[n]o wordage should be found to be surplus. No provision can be left without meaning. If possible, effect should be given to every part and every word.'" Peterson, ex rel. Peterson v. Burns, 2001 SD 126, ¶32, 635 NW2d 556, 568 (quoting Maynard v. Heeren, 1997 SD 60, ¶14, 563 NW2d 830, 835). To give effect to the word "vote," we believe that merely being present and abstaining cannot be deemed to be a concurring vote.

[¶13.] In *Olson v. City of Deadwood*, this Court considered virtually identical statutory language. Although we did not consider the effect of an abstention in determining whether that board of adjustment's decision was valid, we did rely upon the number of valid votes actually cast. 480 NW2d 770, 778 (SD 1992) (discussing SDCL 11-4-24, which required a "concurring vote of at least two-thirds of the members of [the] board" of adjustment). Other courts, directly considering abstentions, conclude that notwithstanding the common-law rule, an abstention is not a vote that may be counted as a concurrence when a statute requires concurring votes. The Kansas Supreme Court explained that in those situations, the common-law rule is modified:

> In Kansas, the common law remains in force, unless modified by constitutional amendment, statutory law, or judicial decision. We recognize the validity of the common-law rule that council members have a duty to vote and should not be allowed to

> prevent government action by inaction; however, here the governing statute unambiguously requires an affirmative vote of a majority of the entire council.

*City of Haven*, 244 Kan at 122, 766 P2d at 147 (construing statute providing "[n]o ordinance shall be valid unless a majority of all the members-elect of the council of council cities. . . vote in favor thereof"). *See also* Mann v. Key, 345 So2d 293, 295 (Ala 1977) (requiring affirmative vote under enactment that required "a vote . . . by a majority of the total membership of the governing body"); State ex rel Stewart v. King, 562 SW2d 704, 706-707 (MoApp 1978) (concluding that statute, which required "a 'favorable vote of three-fourths of all the members of the legislative body'" controlled; not the common-law rule). *See generally* State ex rel. Roberts on Information of McMullen v. Gruber, 231 Or 494, 499-501, 373 P2d 657, 660 (1962) (concluding that an enactment requiring "a majority of the entire membership of the council" abrogated common-law rule and required affirmative vote of the entire membership); In re Reynolds, 170 Vt 352, 353-357, 749 A2d 1133, 1134-1136 (2000) (concluding that the statutory language "the concurrence of a majority. . .," modified any common-law rule); Forbis v. Fremont County School District No. 38, 842 P2d 1063, 1064-1065 (Wy 1992) (concluding that under school board policy that required "three affirmative votes," an abstention did not count as a vote with the majority).

[¶14.]    Considering that our statute expressly requires the concurring votes of two-thirds of the members, we hold that the statute required at least four members of the Board to have affirmatively voted in order to approve the permit. Because that requirement was not met, the Board exceeded its jurisdiction in issuing the permit.

#24134

[¶15.] Reversed and remanded for entry of an order reversing the decision of the Board.

[¶16.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.