#24942-a-SABERS, Retired Justice

**2009 SD 24**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *


GOOS RV CENTER, LEE GOOS, SR.,
TERRY GOOS AND LEE GOOS, JR.,                Petitioners and Appellants,

ALFRED LUPIEN and DONNA LUPIEN,              Petitioners,

v.

MINNEHAHA COUNTY COMMISSION,
MINNEHAHA COUNTY,                            Respondents and Appellees,

MYRL & ROY'S PAVING, INC.,                   Intervenor and Appellees.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE PETER H. LIEBERMAN
Judge

* * * *

THOMAS K. WILKA of
Hagen, Wilka & Archer, P.C.
Sioux Falls, South Dakota          Attorneys for petitioners
                                   and appellants.

* * * *

                                   CONSIDERED ON BRIEFS
                                   ON MARCH 23, 2009

                                   OPINION FILED **04/08/09**

GORDON D. SWANSON
Minnehaha County
 Deputy State's Attorney
Sioux Falls, South Dakota

Attorney for respondents
and appellees, Minnehaha
County Commission,
Minnehaha County.


BRIAN DONAHOE
DAVID L. EDWARDS of
Cutler & Donahoe, L.L.P.
Sioux Falls, South Dakota

Attorneys for intervenor and
appellees, Myrl & Roys.

#24942

SABERS, Retired Justice

[¶1.] Goos RV Center, Lee Goos, Sr., Terry Goos and Lee Goos, Jr., (collectively Goos) appeal the circuit court's decision affirming the Minnehaha County Commission's decision to grant a conditional use permit to Benson Farms, Inc., for gravel extraction. We affirm.

## FACTS

[¶2.] Benson Farms owns property located north of I-90 near Highway 38 in Minnehaha County. That property is zoned in the A-1 Agriculture District. Pursuant to the Minnehaha County zoning ordinances, rock, sand and gravel extraction is allowed in that area as a conditional use if done in conformity with Article 12.08 of those ordinances. Benson Farms entered into an agreement with Myrl & Roy's Paving, Inc., for the removal of gravel from a portion of its property. That agreement was conditioned on obtaining a conditional use permit allowing the gravel extraction. The agreement allowed no more than fifteen acres to be disturbed at a time and required reclamation of the site. Benson Farms applied for a conditional use permit with the Minnehaha County Planning Commission.

[¶3.] Goos RV Center is a former campground that has been converted to a recreational vehicle show area. That operation, along with the residential property of Lee Goos, Jr., is located adjacent to Benson Farms and has operated there for fifteen years. Goos alleged that the gravel operation would devastate the business and decrease the property value. Goos was concerned primarily with dust from the operation, noise and increased truck traffic in the area.

[¶4.] These properties are located in the Skunk Creek area of Minnehaha County, an area that is known to contain deposits of gravel. In fact, there is an old

-1-

gravel pit approximately one mile north of the Goos property and several other pits in the surrounding area. Further, the comprehensive plan for the County indicates that "extractions sites have also concentrated along Skunk Creek west of Sioux Falls."

[¶5.]    Scott Anderson, Minnehaha County Planning Director, evaluated the application. He visited the site, took note of the surrounding area, inspected the road infrastructure and prepared a staff report recommending the grant of the conditional use permit with specified conditions. After the matter was initially presented to the Planning Commission, it was deferred to allow for a hydrology study and the Planning Commission also requested a berm be added next to the Goos property. At a second hearing, the Planning Commission received the hydrology report, which indicated no adverse impact on the nearby wells because of the operation. A revised site plan also included the addition of a six-foot berm. That berm, to be located between a haul road and the Goos property, was estimated to be sixty-feet wide and was to be seeded with vegetation and trees. An agreement was also entered that required Benson Farms to maintain the township road. The Planning Commission heard objections to the application and ultimately granted the permit with twenty-one conditions.[1] Goos appealed that decision to the County Commission.

---

1. These conditions addressed restrictions on fuel storage, road maintenance (including repair, hard-surfacing and the use of dust suppressant), air quality standards, sound level restrictions, parking requirements, reclamation, hours of operation, surety bond, gates and fencing, berm and landscaping requirements.

[¶6.] Following a hearing on the application, where Goos appeared and was represented by counsel, the County Commission changed two of the conditions, dealing with hours of operation and the amount of a surety bond, and upheld the decision to grant the permit. Goos appealed that decision to the circuit court. The circuit court, after visiting the site and hearing the objections to the permit, affirmed the County Commission's decision. The circuit court found that Goos failed to substantiate their claims with any evidence. It also found the proposed gravel operation would not create closures or traffic disruption and would not impact the visibility of the business from I-90. The gravel extraction and crushing operation would most likely take place three weeks a year and the remaining season would consist of loading trucks. The circuit court also did not find testimony of Bill Hegg, a realtor, persuasive as to loss of value to the Goos property as it was not supported by any hard evidence such as appraisals or market studies but, instead, consisted mostly of generalizations.

[¶7.] Goos appeals raising four issues:

1. Whether the County Commission's approval of the conditional use permit was contrary to the comprehensive plan.

2. Whether the County Commission's approval of the conditional use permit violated its zoning ordinances.

3. Whether the County Commission's approval of the conditional use permit was based on false information.

4. Whether Goos was afforded an impartial hearing by the County Commission.

Myrl & Roy's Paving filed a motion for an expedited decision in this appeal and a motion to dismiss the appeal for lack of subject matter jurisdiction. The motion

seeking an expedited decision was granted and the motion to dismiss was held in abeyance.

## STANDARD OF REVIEW

[¶8.] SDCL 7-8-30 provides that appeals to the circuit court from a decision by the county board "shall be heard and determined de novo." This Court has interpreted this standard as meaning "the circuit court should determine anew the question . . . independent of the county commissioner's decision." *In re* Conditional Use Permit Denied to Meier, 2000 SD 80, ¶21, 613 NW2d 523, 530. In addition, "the trial court should determine the issues before it on appeal as if they had been brought originally. The court must review the evidence, make findings of fact and conclusions of law, and render judgment independent of the agency proceedings." *Id.* "If the court finds the decision was arbitrary or capricious, it should reverse the decision and remand for further proceedings. Otherwise, it must affirm." *Id.* ¶22.

## DISCUSSION

[¶9.] SDCL ch. 11-2 provides that a county planning commission is authorized to prepare a comprehensive plan for the county. SDCL 11-2-2; 11-2-11. A comprehensive plan is defined as:

> a document which describes in words, and may illustrate by maps, plats, charts, and other descriptive matter, the goals, policies, and objectives of the board to interrelate all functional and natural systems and activities relating to the development of the territory under its jurisdiction[.]

SDCL 11-2-1(3). The purpose of the comprehensive plan is outlined in SDCL 11-2-12:

> The comprehensive plan shall be for the purpose of protecting and guiding the physical, social, economic, and environmental development of the county; to protect the tax base; to encourage

> a distribution of population or mode of land utilization that will facilitate the economical and adequate provisions of transportation, roads, water supply, drainage, sanitation, education, recreation, or other public requirements; to lessen governmental expenditure; and to conserve and develop natural resources.

"Zoning ordinances and other controls deemed necessary are included as adjunct to and in accordance with the comprehensive plan." Coyote Flats, LLC v. Sanborn County Com'n, 1999 SD 87, ¶9, 596 NW2d 347, 350. Consequently, a county commission's decision to grant a conditional use permit must be done in accordance with the comprehensive plan and local zoning ordinances. "We interpret zoning ordinances in accord with the rules of statutory construction supplemented by any rules of construction within the ordinances themselves." Hines v. Bd. of Adjustment of City of Miller, 2004 SD 13, ¶10, 675 NW2d 231, 233-34.

[¶10.] Goos contends that the County Commission's approval of the permit violated both the comprehensive plan and the zoning ordinances. The comprehensive plan adopted by Minnehaha County is an extensive document outlining population growth and trends, land use and development plans, transportation, employment, pubic land use, environmental considerations and provides a general framework for dealing with a myriad of other issues. That plan specifically acknowledges construction aggregate land use and prevalent "sand and gravel pits dispersed across the county which supply aggregate to road construction and building projects." Included in that plan is the recognition that "[e]xtraction sites have also concentrated along Skunk Creek west of Sioux Falls." The comprehensive plan continues:

> Smaller isolated pits are scattered throughout the county and generally supply local needs such as gravel for township roads

and an occasional project involving nearby highway construction. Many of these pits experience only limited usage while others remain inactive for several years at a time. The level of activity is generally dictated by the number of road or other construction projects in the general vicinity of these pits. Residents who have recently built in the country are usually surprised and upset when an unexpected flurry of activity occurs in previously inactive or seldom used pits.

The comprehensive plan also provides criteria for considering mining related land use. Those factors include:

- Development criteria based on type of extraction, intensity and duration of use.
- Appropriate separation from existing residences.
- Adjacent to hard surfaced roads or upgrade existing roads used for hauling.
- Visual considerations-berms and natural screening.
- Environmental impacts-noise, dust, blasting, hydrology.
- Reclamation as an ongoing process.

[¶11.] The zoning ordinances further inform the necessary considerations. In that regard, Article 3.04 recognizes that for this area, which is zoned A-I Agriculture, one of the conditional uses is "rock, sand, or gravel extraction in conformity with Article 12.08." Article 12.08 provides criteria for applicants seeking to extract rock, sand and/or gravel. Considerations include the buffer area, hours of operation, visual considerations, blasting, noise, air quality, hydrology, roads, surety and reclamation. Additionally, the County may impose more or less stringent requirements than those specified in Article 12.08 based on the specific characteristics of a site being considered.

[¶12.] In reviewing all the evidence presented in this matter, the record does not support a determination that the grant of the permit was arbitrary or capricious or based on false information as Goos contends. Goos has participated at all stages of this proceeding and has consistently pointed out their desire not to have the

gravel extraction site located near their property. Their arguments concerning deprivation of property value, noise, dust, lack of notice and traffic impact have been considered throughout the proceeding. However, the circuit court found their arguments unpersuasive and unsupported by the factual evidence. Although the comprehensive plan lists goals and considerations that Goos contends have been ignored or overlooked, it is obvious from the record Goos did not support any weighing of the interests involved unless it meant the end of the proposed gravel operation next door. "This Court has recognized that allowing the use of a person's property to be held hostage by the will and whims of neighboring landowners without adherence or application of any standards or guidelines is repugnant to the due process clause of the Fourteenth Amendment." Schafer v. Deuel County Bd. of Comm'rs, 2006 SD 106, ¶12, 725 NW2d 241, 246.

[¶13.] This same theme is carried through in Goos' argument alleging they were denied an impartial hearing by the County Commission. Without any evidentiary support they assert that two of the County Commissioners were biased against them and were advocates on behalf of Myrl & Roy's Paving. These County Commissioners were not called as witnesses and there was no evidence offered indicating their bias or impartiality, other than of course the fact they expressed their support for the permit and rejected Goos' arguments. *See* Riter v. Woonsocket School District, 504 NW2d 572, 574 (SD 1993) (discussing the "strong presumption of good faith" and necessity of showing "either actual bias on the part of the Board or the existence of circumstances that lead to the conclusion that an unacceptable risk of actual bias or prejudgment inhered in the Board's procedure").

[¶14.] The record reveals the County Commission, and later the circuit court, measured and weighed each of the necessary factors in turn under the applicable zoning ordinances and determined the permit should be granted with conditions related to the operation. "The ultimate determination of the public's best interest is for the legislative body, not a minority of neighboring property owners." *Hines*, 2004 SD 13, ¶15, 675 NW2d at 235. *See also* Scott County Lumber Co, Inc. v. City of Shakopee, 417 NW2d 721, 728 (MinnCtApp 1988) (holding the denial of a conditional use permit for a gravel pit was arbitrary when based on speculation from neighboring landowners regarding the effect of the gravel operation on the value of their land). On this record, Goos has not met its burden to overcome the discretion afforded the Commission in making such a decision.

## MOTION TO DISMISS

[¶15.] After the Planning Commission's decision was affirmed by the County Commission, Goos filed a notice of appeal in the circuit court indicating the appeal was "brought pursuant to SDCL 7-8-27." Myrl & Roy's Paving immediately filed a motion to dismiss the appeal contending the circuit court did not have subject matter jurisdiction to hear the appeal. The circuit court denied the motion.

[¶16.] "Subject matter jurisdiction to conduct an appeal from a county commission decision presents a question of law." *In re* Appeal from Decision of Yankton County Comm'n, 2003 SD 109, ¶9, 670 NW2d 34, 37. "This [C]ourt has consistently recognized that the right to an appeal is purely statutory and no appeal may be taken absent statutory authorization. An attempted appeal from which no appeal lies is a nullity and confers no jurisdiction on the court except to dismiss it." Elliott v. Bd. of County Comm'rs, 2005 SD 92, ¶15, 703 NW2d 361, 368. "The

legislature prescribes the procedure for reviewing the actions of the county. Review may be had only by complying with the conditions the legislature imposes." Elliott v. Bd. of Co. Comm'rs., 2007 SD 6, ¶17, 727 NW2d 288, 290.

[¶17.] Myrl & Roy's Paving contends that the appeal here, brought pursuant to SDCL 7-8-27, is improper and that any challenge to the decision in circuit court should have proceeded as a writ proceeding under SDCL 11-2-61. SDCL 7-8-27 provides that "[f]rom all decisions of the *board of county commissioners* upon matters properly before it, there may be an appeal to the circuit court." (Emphasis added.) SDCL 11-2-61 provides "[a]ny person or persons, jointly or severally, aggrieved by any decision of the *board of adjustment* . . . may present to a court of record a petition duly verified, setting forth that the decision is illegal, in whole or in part, specifying the grounds of the illegality." (Emphasis added.)

[¶18.] The zoning ordinances state that a conditional use permit is applied for in the first instance with the Planning Commission. Article 19.01. In this case, the Planning Commission approved the conditional use permit. Under the zoning ordinances, an appeal of that decision is heard by the County Commissioners. Article 19.06. The County Commissioners may "uphold, overrule or amend the decision of the Planning Commission." *Id.* It is beyond dispute that the County Commissioners approved the conditional use permit. Further, the minutes of that meeting reflect this was an appeal from the Planning Commission.

[¶19.] Comparatively, the Planning Commission may also act as the Zoning Board of Adjustment. Article 21.01. In that role, the Board of Adjustment is empowered to "grant variances and hear appeals to the terms of [the Zoning] regulations." *Id.* Significantly, "[a]ppeals may be taken to the Circuit Court by any

person or persons, jointly or severally, aggrieved by any decision of the Board of Adjustment . . . in the manner and form provided by the statutes of the State of South Dakota, in such cases made and provided." Article 21.08.

[¶20.]      SDCL 11-2-49 specifically provides that a planning and zoning commission may act as a board of adjustment. As is consistent with the Minnehaha County zoning ordinances, an appeal from a decision of the Board of Adjustment must be made to the circuit court under SDCL ch. 11-2. *See* Hay v. Bd. of Comm'rs, 2003 SD 117, ¶11, 670 NW2d 376, 379-80 (outlining the statutory procedure to appeal from a board of adjustment decision). As this Court has recognized:

> In 2000, the South Dakota Legislature made revisions to portions of the zoning laws codified in SDCL Chapter 11-2. As part of the revisions, the Legislature implemented major changes in the form and procedure of county zoning appeals. We recognized this new appellate scheme in relation to an appeal from a county *board of adjustment* in *In re Yankton County Commission,* 2003 SD 109, ¶¶17-18, 670 NW2d 34, 39-40. We said, "[w]e believe that the repeal of the prior statutes and the enactment of this new comprehensive appellate scheme expressed legislative intent to completely occupy the field of taking *board of adjustment* appeals." *Id.* ¶18, 670 NW2d at 40.
>
> Under the revised statutory scheme, an appeal from an administrative officer's decision (for example, a zoning officer) advances to the county *board of adjustment* then directly into circuit court. SDCL 11-2-55 describes the appeal process from an administrative officer to *the board of adjustment*. It provides:
>
> Appeals to the *board of adjustment* may be taken by any person aggrieved or by any officer, department, board, or bureau of the county *affected by any decision of the administrative officer*. The appeal shall be taken within a reasonable time, as provided by the rules of the *board of adjustment*, by filing with the officer from whom the appeal is taken and with the *board of adjustment* a notice of appeal specifying the grounds of the appeal. The officer from whom the appeal is taken shall transmit to the *board of adjustment* all the papers constituting the record upon which the action appealed from was taken.

> *Id.* (emphasis added).

> The law requires that the *board of adjustment* conduct a hearing on the appeal. SDCL 11-2-57. The *board of adjustment* has the authority to "reverse or affirm, wholly or partly, or may modify the order, requirement, decision, or determination appealed from and may make such order, requirement, decision, or determination as ought to be made, and to that end has all the powers of the officer from whom the appeal is taken." SDCL 11-2-58. The law further specifies that an appeal from the *board of adjustment* is taken directly to circuit court. SDCL 11-2-61, 11-2-62; *In re Yankton County Comm'n,* 2003 SD 109, ¶¶17-18, 670 NW2d at 39-40.

*Elliott,* 2005 SD 92, ¶¶10-12, 703 NW2d at 365-66 (emphasis indicated with underline added). Therefore, the dispositive question is whether the initial determination was made by the Planning Commission or the Planning Commission acting as a Board of Adjustment. *Compare Hay,* 2003 SD 117, ¶11, 670 NW2d at 380 (recognizing that "because the planning commission had acted as a board of adjustment, the [] only recourse was an appeal to the circuit court."); Jensen v. Turner County Bd. of Adjustment, 2007 SD 28, ¶4, 730 NW2d 411, 412-13 ("Appeals from boards of adjustment are considered by circuit courts under writs of certiorari."). If it was acting as the Board of Adjustment appeal should have gone directly to circuit court under SDCL 11-2-61; thus rendering the current appeal jurisdictionally defective. However, if the Planning Commission was acting as the Planning Commission then appeal to the Board of County Commissioners and then the circuit court was proper under SDCL 7-8-27.

[¶21.]     It is highly relevant to note that the legislature modified SDCL ch. 11-2 concerning the powers of a board of adjustment in 2004 to eliminate a board of adjustments authority to approve certain conditional use permits. 2004 SD Sess.

Laws Ch. 101, § 2-4. It is also apparent from the record that the County Commissioners treated this as an appeal from the Planning Commission. That is what is reflected in its minutes and that is how it was treated procedurally without any apparent objection. This was a decision concerning a conditional use permit, which, according the zoning ordinances, is the prerogative of the Planning Commission. Article 19.01. Appeals from that body go to the County Commission. Article 19.06. Whereas, the Board of Adjustment hears variances and appeals from decisions of the Planning Director in the enforcement of regulations. Article 21.03. Although the Planning Commission may act as a Board of Adjustment in certain situations, there is no demonstration it acted as such here and in fact the record indicates the contrary. As a result, Myrl & Roy's Paving's attempt to rely on authority concerning Board of Adjustment appeals is not persuasive and the appeal is proper.

[¶22.] Accordingly, the motion to dismiss the appeal is denied and the judgment of the circuit court is affirmed.

[¶23.] GILBERTSON, Chief Justice, and, KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.