2003 SD 109

**In re Appeal from Decision of YANK-TON COUNTY COMMISSION on, June 25, 2002, Denying the Appeal of Guy Larson, an Aggrieved Person, and Concerning the Issuance of a Building Permit to Larry Ryken, Permit Number 22A, Issued on April 19, 2002.**

Nos. 22681, 22692.

Supreme Court of South Dakota.

Argued May 30, 2003.

Decided Sept. 10, 2003.

Nora M. Kane, David A. Domina of Domina Law, Omaha, Nebraska, James G.

Abourezk, Sioux Falls, South Dakota, Attorneys for appellant Yankton Land & Cattle Co.

Robert L. Chavis, Yankton County State's Attorney, Yankton, South Dakota, Attorneys for appellee Guy Larson, et al.

ZINTER, Justice.

[¶ 1.] Larry Ryken, owner of a feedlot and sale barn, applied for a building permit after Yankton County had adopted a temporary zoning ordinance (TZO). Although the permit was granted, Guy Larson, a local taxpayer, unsuccessfully appealed to the Yankton County Board of Adjustment. Larson did not, however, appeal the Board of Adjustment's decision to circuit court in accordance with SDCL 11–2–61 (2000). Instead, he appealed the Board of Adjustment decision to the Yankton County Commission under section 1903 of the TZO. After also losing his appeal with the County Commission, Larson and several other taxpayers (collectively referred to as Taxpayers) successfully petitioned the Yankton County State's Attorney to appeal the County Commissioners' decision to circuit court. The State's Attorney appealed under SDCL 7–8–28, a non-zoning statute allowing appeals of county commission decisions that are of general interest to the public. The circuit court assumed jurisdiction and affirmed issuance of the permit on certain conditions. Ryken's successor in interest (YLC),[1] the State's Attorney, and Taxpayers all appeal to this Court raising various issues. Because we hold that the statutory method of appealing a Board of Adjustment decision in SDCL 11–2–61 preempted the County Commission review under section 1903 of the TZO, we only address the jurisdictional issue. On that issue we hold that because the appeal taken to the County Commission under the TZO was preempted, there was no permit decision before the County Commission that could be appealed to circuit court under SDCL 7–8–28. We further hold that because Taxpayers did not take an appeal from the Board of Adjustment to circuit court as directed by SDCL 11–2–61, the circuit court lacked jurisdiction. We therefore reverse.

## FACTS AND PROCEDURAL HISTORY

[¶ 2.] Ryken owned the Yankton Livestock Market since 1978. The facility was used as a salebarn and feedlot for cattle and horses owned by Ryken and his customers. In December 2002, Yankton County adopted the TZO.[2] Under the TZO, Ryken's facility was a nonconforming use.[3] However, because Ryken's facility was in existence at the time the TZO was enacted, his nonconforming use was "grandfathered."

1. While Ryken was preparing to comply with the environmental requirements, he entered into negotiations with Yankton Land and Cattle Co. (YLC) to sell the facility. This sale was completed in early June, 2002. YLC is the owner of the property and the real party in interest as assignee of the permit.

2. The Yankton County Commissioners originally enacted a zoning ordinance establishing standards for concentrated animal feedlots in February, 2001. However, that ordinance was declared unconstitutional by a circuit court in June 2001. The zoning ordinance was held unconstitutional because the county did not have a comprehensive plan in place. That decision was affirmed in *Heine Farms v. Yankton County ex rel.* County Comm'rs, 2002 SD 88, 649 N.W.2d 597.

3. Under the TZO, Ryken's facility was a Class A or Class AA animal feeding operation. The TZO provided that such operations could not be located within three miles from any incorporated municipality. Ryken's facility was located two miles from the incorporated municipality of Yankton.

[¶ 3.] At some point in these proceedings, the South Dakota Department of Environment and Natural Resources (DENR) determined that the facility's animal waste system did not comply with new state and federal regulations. Ryken's existing holding ponds only had a capacity of 60 to 90 days. The new regulations required Ryken to develop holding ponds that could contain 365 days of waste and storm water runoff in a "zero discharge system." Because of these new requirements, Ryken hired an engineering firm to prepare a plan to bring the facility into compliance. After the engineers completed their plans for the holding pond improvements, Ryken applied to Tom Fiedler, the Yankton County Zoning Administrator, for the necessary building permit.[4]

[¶ 4.] Because the TZO was new and the permit was controversial, Fiedler asked the Yankton County Commissioners and other zoning officials for guidance. On April 16, 2002, the Yankton County Planning Commission and the Yankton County Board of Commissioners, the latter acting as the Yankton County Board of Adjustment, conducted a joint meeting to discuss the permit. Following the meeting, the Planning Commission and the Board of Adjustment "recommended"[5] that Fiedler issue the building permit subject to a number of conditions that are not relevant to this appeal. On April 19, 2002, Fiedler issued the building permit subject to those conditions.

[¶ 5.] Larson subsequently appealed the Zoning Administrator's decision to the Planning Commission. When that appeal was denied, Larson appealed to the Board of Adjustment. That appeal was also denied. However, Larson failed to appeal the Board of Adjustment's decision to circuit court in accordance with SDCL 11–2–61. Instead, Larson appealed from the Board of Adjustment to the County Commission under section 1903 of the TZO. The County Commission subsequently heard the appeal and affirmed the Board of Adjustment's decision.

[¶ 6.] One day later, Taxpayers petitioned[6] the Yankton County State's Attorney to file a "taxpayer appeal" under SDCL 7–8–28[7] from the County Commis-

---

4. The permit application described the work as: "[t]he existing feedlots shall be modified to accommodate the construction of sedimentation and holding ponds designed to contain 365 days of waste production and stormwater runoff in a zero discharge system." Ryken did not seek to build a new building, but sought to repair and reconfigure the livestock pens to accommodate the construction of new sedimentation and holding ponds that would contain the necessary accumulation of waste and storm water runoff.

5. The TZO does not provide for Planning Commission or Board of Adjustment issuance of a permit, but instead allows the Zoning Administrator to make permit decisions. However, as was previously noted, because the zoning procedures were new and this case presented complex issues, Fiedler requested guidance from the officials on the Planning Commission and Board of Adjustment. The trial court found that the Board of Adjustment acted merely as an advisory body for the Zoning Administrator's benefit. Therefore, the trial court concluded that the Board of Adjustment did not violate the procedures in the TZO.

6. At oral arguments, YLC asserted that a petition, signed by at least fifteen taxpayers, was never served on YLC, and that there was a question of whether there ever was such a petition. However, a taxpayer petition bearing the file stamps of the County Auditor (June 26, 2002) and the Circuit Court (June 28, 2002) are in the record.

7. SDCL 7–8–28 provides:

Upon written demand of at least fifteen taxpayers of the county, the state's attorney shall take an appeal from any action of such board if such action relates to the interests or affairs of the county at large or any portion thereof, in the name of the

sioners' decision affirming the Board of Adjustment. The State's Attorney filed that appeal in circuit court together with an application for a temporary injunction and, in the alternative, a request for a stay. A hearing was held in circuit court the day after the appeal was filed. The circuit court denied the request for an injunction and the stay, and it scheduled a trial.

[¶ 7.] In September 2002, the circuit court conducted a two-day trial on the taxpayer appeal. The circuit court heard testimony concerning the historical use of the facility. After trial, the circuit court affirmed the County Commission, but concluded that the permit should have expressly limited the future use of the facility to its "historical use." The circuit court remanded the matter with orders that the permit limit the use of the property to "6,006 head (animal units) in the indoor livestock auction barn and 2,500 head of feeder cattle (animal units) in the outdoor livestock feeding pens." The court further ordered the permit to indicate "that no expansion of the prior nonconforming use is being permitted."

[¶ 8.] YLC appeals the circuit court's decision, raising three issues. By notice of review, Taxpayers raise three additional issues. Because we conclude that the jurisdictional issue concerning the method of appeal is dispositive, we only consider:

**Whether the circuit court had jurisdiction to hear the appeal.**

## STANDARD OF REVIEW

[¶ 9.] Subject matter jurisdiction to conduct an appeal from a county commission decision presents a question of law. *In re Estate of Galada*, 1999 SD 21,

¶ 8, 589 N.W.2d 221, 222–23 (citing *Kroupa v. Kroupa*, 1998 SD 4, ¶ 10, 574 N.W.2d 208, 210). "Accordingly, [that issue is] fully reviewable and we afford no deference to the conclusions reached by the trial court." *Id.* Furthermore, to resolve this case we must engage in statutory interpretation. "We review statutory interpretation de novo." *Maas v. Department of Commerce and Regulation*, 2003 SD 48, ¶ 8, 661 N.W.2d 726, 730 (further citations omitted).

## DECISION

[¶ 10.] **The trial court lacked jurisdiction to hear the appeal.**

[¶ 11.] Larson started the appellate process that led to this circuit court appeal. He appealed from the local Zoning Administrator to the Planning Commission, from the Planning Commission to the Board of Adjustment, and from the Board of Adjustment to the Yankton County Commission. These appeals were taken pursuant to section 1903 of the TZO, which provided that the County Commission had the power to review local zoning decisions. It provided:

> The County Commission shall have the power to hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by the Zoning Administrator, Planning Commission, or *Board of Adjustment* based on or made in the enforcement of any zoning regulation or any regulation relating to the location or soundness of structures or to interpret any map.

*Id.* (emphasis added).

[¶ 12.] After the County Commission affirmed the Board of Adjustment's deci-

---

county, if he deems it to the interest of the county so to do; and in such case no bond need be required or given and upon serving the notice provided for in § 7-8-29, the county auditor shall proceed the same as if a bond had been filed and his fees for making the transcript shall be paid as other claims by the county.

sion, Taxpayers, through the State's Attorney, appealed the County Commissioner's decision to circuit court under SDCL 7–8–28. Under that statute, a State's Attorney is authorized to appeal a decision of the county commissioners upon demand of at least fifteen taxpayers if a commission decision "relates to the interests or affairs of the county at large or any portion thereof." *Id.*

[¶ 13.] YLC does not dispute that SDCL 7–8–28 permits general interest appeals to circuit court from county commission decisions. YLC, however, contends such appeals are allowed only if the decision being reviewed was properly before a county commission. In this case, YLC argues that the Board of Adjustment decision was not properly before the County Commission. YLC contends Taxpayers had no right to appeal the Board of Adjustment's decision to the County Commission because SDCL 11–2–61 preempted section 1903 of the TZO. That statute, as it existed at the time of the Board of Adjustment appeal (May 29, 2002), only allowed an appeal to circuit court from a board of adjustment decision. It did not permit an appeal to a county commission. SDCL 11–2–61 (2000) provided:

> *Any person* or persons, jointly or severally, *aggrieved* by any *decision of the board of adjustment,* or *any taxpayer,* or any officer, department, board, or bureau of the county, *may present to a court of record* a petition duly verified, setting forth that the decision is illegal, in whole or in part, specifying the grounds of the illegality. *The petition shall be presented to the court within thirty days after the filing of the decision in the office of the board of adjustment.*

*Id.* (emphasis added). Because this statute did not allow an appeal from the Board of Adjustment to the County Commission,

YLC argues that the circuit court did not have jurisdiction under SDCL 7–8–28 to review the decision of the County Commission.

[¶ 14.] SDCL 11–2–61 and section 1903 of the TZO both provide for an appeal from a board of adjustment. Therefore, we must first determine whether the TZO was preempted by the statute. YLC relies upon *Rantapaa v. Black Hills Chair Lift Co.,* 2001 SD 111, ¶ 23, 633 N.W.2d 196, 203, to support its argument that the "Legislature [through SDCL 11–2–61] intended to fully occupy or preempt the area of appeals from [b]oards of [a]djustment, thereby preempting or abrogating [a] conflicting local ordinance."

[¶ 15.] *Rantapaa* discussed three ways in which statutes may preempt local ordinances.

> There are several ways in which a local ordinance may conflict with state law. In that event, state law preempts or abrogates the conflicting local law. First, an ordinance may prohibit an act which is forbidden by state law and, in that event, the ordinance is void to the extent it duplicates state law. Second, a conflict may exist between state law and an ordinance because one prohibits what the other allows. And, third, state law may occupy a particular field to the exclusion of all local regulation.

*Id.* (internal citations omitted). The first two preemptive rules are not applicable in this case. Under the third rule, we must determine whether the Legislature intended to occupy the field of zoning decision appeals to the exclusion of local ordinances when it enacted SDCL 11–2–61 (2000). If it so intended, section 1903 of the TZO was preempted, and the appeal from the Board of Adjustment was not properly before the County Commission.

[¶ 16.] In analyzing the preemption issue, we begin by noting that state preemp-

tion of county ordinances is analogous to federal preemption of state law. Therefore, the United States Supreme Court's preemption analysis provides guidance. In looking at preemption, the Supreme Court has explained that Congress has "completely occupied the field" when it "may be inferred [that] the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation." *Hillsborough County, Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714, 721 (1985) (further citations omitted). We must therefore consider whether the Legislature's regulation of local zoning appeals in SDCL ch. 11–2 was sufficiently comprehensive to leave no room for supplementary county regulation of board of adjustment appeals.

[¶ 17.] In considering that question, we first note that the 2000 Legislature significantly changed its regulation of local zoning. Before the 2000 changes in SDCL ch 11–2, "county commissions [were given] wide discretion in the area of zoning" by SDCL 11–2–36 [8] (repealed, SL 2000, ch. 69, § 43). *See generally Ridley v. Lawrence County Comm'n*, 2000 SD 143, ¶ 9, 619 N.W.2d 254, 258. Moreover, the Legislature specifically directed that the decisions of boards of adjustment were "subject to appropriate conditions or safeguards being adopted by the [county commission]." SDCL 11–2–25.1 (repealed, SL 2000 ch. 69 § 18). Finally, before the 2000 changes, there was no statute in SDCL ch 11–2

restricting that authority by directing the method of taking an appeal from a board of adjustment. Therefore, before the 2000 enactments, there was room for county regulation of appeals from boards of adjustment. In fact, there was statutory authority for counties to adopt ordinances allowing county commission review of board of adjustment decisions. SDCL 11–2–25.1 (repealed).

[¶ 18.] However, the 2000 Legislature repealed those provisions and enacted a comprehensive statutory zoning scheme, which among other things, directed the method of appealing board of adjustment decisions. Unlike the prior version of SDCL ch 11–2 that left the method of appealing board of adjustment decisions to the counties, a detailed statutory procedure for appealing from a board of adjustment was enacted. SDCL §§ 11–2–61 to 65 (2000) provided:

SDCL 11–2–61:

*Any person* or persons, jointly or severally, *aggrieved* by any decision of the board of adjustment, *or any taxpayer*, or any officer, department, board, or bureau of the county, may *present to a court of record* a *petition* duly verified, setting forth that the decision is illegal, in whole or in part, specifying the grounds of the illegality. *The petition shall be presented to the court within thirty days after the filing of the decision in the office of the board of adjustment.*

---

8. Prior to 2000, SDCL 11–2–36 provided:

Any board of county commissioners may adopt zoning ordinances, resolutions or regulations designating or limiting the location, height, bulk, number of stories, size of, and the specific uses for which dwellings, buildings and structures may thereafter be erected or altered; the minimum and maximum size of yards, or other open spaces; sanitary, safety and protective measures

that shall be required for such dwellings, buildings and structures; the area required to provide for off-street loading and parking facilities; flood plain areas; and to avoid too great a concentration or scattering of the population. All such provisions shall be uniform for each class of land or building throughout any district, but the provisions in one district may differ from those in other districts.

SDCL 11–2–62:

Upon the presentation of the petition, the court may allow a writ of certiorari directed to the board of adjustment to review the decision of the board of adjustment and shall prescribe the time within which a return must be made and served upon the realtor's attorney, which may not be less than ten days and may be extended by the court. The allowance of the writ does not stay proceedings upon the decision appealed from, but the court may, on application, on notice to the board of adjustment and on due cause shown, grant a restraining order.

SDCL 11–2–63:

The board of adjustment is not required to return the original papers acted upon by it, but it is sufficient to return certified copies of the papers, or of such portions of the papers as may be called for by the writ. The return shall concisely set forth such other facts pertinent and material to show the grounds of the decision appealed from and shall be verified.

SDCL 11–2–64:

If upon the hearing it appears to the court that testimony is necessary for the proper disposition of the matter, the court may take evidence, or appoint a referee to take such evidence as it may direct and report the evidence to the court with the referee's findings of fact and conclusions of law, which constitute a part of the proceedings upon which the determination of the court is made.

SDCL 11–2–65:

The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review.

Costs are not allowed against the board of adjustment unless the court determines that the board of adjustment acted with gross negligence, or in bad faith, or with malice in making the decision appealed from.

(Emphasis added.) We believe that the repeal of the prior statutes and the enactment of this new comprehensive appellate scheme expressed legislative intent to completely occupy the field of taking board of adjustment appeals.

[¶ 19.] The 2003 legislative changes to SDCL ch. 11–2, although not directly applicable to this appeal, confirm the preemption conclusion. As previously noted, the right to appeal from a board of adjustment to a county commission did not exist under the version of SDCL 11–2–61 (2000) in existence on May 29, 2002, when Taxpayers filed their appeal with the County Commission. However, the 2003 Legislature changed the appellate procedure again to now specifically allow an appeal from the board of adjustment to the county commission pursuant to a county zoning ordinance. The 2003 version of SDCL 11–2–58 now provides:

> In exercising the powers mentioned in § 11–2–53, *all decisions of the board of adjustment ... may be appealed to the board of county commissioners in accordance with the county ordinance,* and any final decision of the board of adjustment or county commission shall be deemed a final administrative decision not subject to referendum or review. However, any aggrieved person or legal entity has the right to appeal as allowed in § 11–2–61.

SDCL 11–2–58 (2003); SL 2003 ch. 78, § 3 (emphasis added). Furthermore, the 2003 amendment to SDCL 11–2–61 now permits an appeal from *the county commission* or the board of adjustment to circuit court. The 2003 version of SDCL 11–2–61 provides:

> Any person or legal entity aggrieved by a decision of *the board of adjustment or*

*board of county commissioners* may present to a court of record a petition duly verified, setting forth that the decision is illegal, in whole or in part, specifying the grounds of the illegality. The petition shall be presented to the court within thirty days after the filing of the decision in the office of the board of adjustment or the office of the board of county commissioners.

SDCL 11–2–61 (2003); SL 2003 ch. 78, § 6 (emphasis added).

[¶ 20.] These changes in SDCL ch 11–2 evince legislative intent to change legal rights.

> It is ... an established principle of statutory construction that, where the wording of an act is changed by amendment, it is evidential of an intent that the words shall have a different construction.
>
> When an amendment is passed, it is presumed the legislature intended to change existing law. An amendment indicates a change in rights:
>
>> The courts have declared that the mere fact that the legislature enacts an amendment indicates that it thereby intended to change the original act by creating a new right or withdrawing an existing one. Therefore, any material change in the language of the original act is presumed to indicate a change in legal rights.

*South Dakota Subsequent Injury Fund v. Cas. Reciprocal Exch.*, 1999 SD 2, ¶ 18, 589 N.W.2d 206, 209–10 (citations omitted). We therefore conclude that the legislative actions in 2000 and 2003 reflect legislative intent to change the permissible methods of taking appeals from boards of adjustment.

[¶ 21.] Furthermore, the 2000 enactments, including SDCL 11–2–61, were sufficiently comprehensive to make reasonable the inference that the Legislature intended to occupy the field and leave no room for supplementary county regulation. Therefore, SDCL 11–2–61 preempted section 1903 of the TZO, and no appeal was permitted from the Yankton County Board of Adjustment to the Yankton County Commission. Because that appeal was not permitted, the Board of Adjustment's decision was not before the County Commission. Because the permit decision was not before the County Commission, the circuit court had no jurisdiction to review the County Commission's decision under SDCL 7–8–28. Finally, because neither Taxpayers nor the State's Attorney filed an appeal under SDCL 11–2–61, the circuit court lacked subject matter jurisdiction.

[¶ 22.] We reverse.

[¶ 23.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.