#25588-a-JKM
**2010 S.D. 81**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA, ex rel,
MARTY J. JACKLEY and
ASSOCIATED SCHOOL BOARDS
OF SOUTH DAKOTA, INC.,                                  Plaintiffs and Appellees,
       v.
CITY OF COLMAN,                                          Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE THIRD JUDICIAL CIRCUIT
MOODY COUNTY, SOUTH DAKOTA
\* \* \* \*

HONORABLE TIM D. TUCKER
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

JEFFREY P. HALLEM
Assistant Attorney General                              Attorneys for appellee
Pierre, South Dakota                                    State of South Dakota.

WILLIAM H. ENGBERG
Pierre, South Dakota

RICHARD P. TIESZEN
NAOMI R. CROMWELL of
Tieszen Law Office                                      Attorneys for appellee
Pierre, South Dakota                                    Associated School Boards.

PAUL M. LEWIS
WILLIAM J. ELLINGSON                                    Attorneys for defendant
Flandreau, South Dakota                                 and appellant.

\* \* \* \*

ARGUED ON AUGUST 25, 2010

OPINION FILED **10/27/10**

MEIERHENRY, Justice

[¶1.]     The question in this case is whether a city can enforce its speed limit ordinance, instead of state law, on a state trunk highway and thereby direct the fine to city coffers rather than local school districts.  This question was brought to the South Dakota Attorney General's attention after the City of Colman, South Dakota, ticketed speeders on State Highway 34 with a city ordinance violation rather than a state law violation.  The Attorney General notified Colman that the city did not have authority to enforce the city's speed limit ordinance on the state highway.  Colman rejected the Attorney General's opinion and filed an action for declaratory judgment in circuit court.  The circuit court agreed with the Attorney General.  Colman appeals.  We affirm and hold that Colman does not have authority to enforce its city ordinance rather than state law.

[¶2.]     Highway 34 is part of the state trunk highway system and passes through Colman's city limits.  The speed limit on Highway 34 is set by state law and violations are classified as misdemeanors.  *See* SDCL 32-25-7.  Colman's city council enacted city ordinance 10.0201, which duplicated the state speed limit and penalty classification.  *See* SDCL 32-25-7.  When enforcing the speed limit, Colman's law enforcement officers ticketed speeders with a city ordinance violation rather than a state law violation.[1]

---

1.     The Legislature has given city law enforcement the power to arrest those who violate state speed limits when the violation occurs on the portion of the state highway passing through a city's jurisdiction.  *See South Dakota v. Hirsch*, 309 N.W.2d 832, 835 (S.D. 1981); SDCL 9-29-19.

[¶3.]     The main difference between enforcing the city ordinance rather than state law lies in the distribution of the fine proceeds. South Dakota law directs that 65 percent of fines collected from city violations go to the city treasury and 35 percent to the State. SDCL 16-2-34. In contrast, 100 percent of the fines collected from state law violations go to school districts in the county where the fine is assessed. S.D. Const. art. VIII, § 3.[2]

[¶4.]     Colman claims it has statutory authority to enforce its own ordinance rather than state law. Colman gleans its authority from the following four statutes: SDCL 9-31-1; SDCL 9-31-3; SDCL 9-29-1; and, SDCL 32-14-5. The first statute, SDCL 9-31-1, gives a city the power to regulate the use of certain vehicles. It provides that "[e]xcept as otherwise provided, every [city] may regulate the use of motor vehicles, bicycles, house cars, house trailers, trailer coaches, traction engines, tractors, and road rollers." *Id.* The second statute, SDCL 9-31-3, grants a city the power to regulate the speed of vehicles. It provides that "[e]very [city] shall have power to regulate the speed of animals, vehicles, motor vehicles, cars, and locomotives." *Id.* The third statute, SDCL 9-29-1, gives a city the power to enforce its ordinances within, and one mile surrounding, the city limits.[3] *Id.* Finally,

---

2.     The Associated School Boards of South Dakota, Inc. joined the State as a party plaintiff because Colman's enforcement of its ordinance, rather than state law, reduced the amount of money that school districts in the area received.

3.     SDCL 9-29-1 provides:

          Every [city] shall have power to exercise jurisdiction for all
          authorized purposes over all territory within the corporate
          limits and over any public ground or park belonging to the [city],
                                                                    (continued . . .)

SDCL 32-14-5 provides cities with limited regulatory authority for "traffic on highways under their jurisdiction." *Id.*[4] Colman claims these statutes, collectively, demonstrate that the Legislature "intended to empower [cities] with the authority to regulate traffic over all territory within their corporate limits."

[¶5.]        In analyzing Colman's claim, we continue to apply our longstanding rule that cities have only those powers expressly granted to them by the Legislature. *Elkjer v. City of Rapid City*, 2005 S.D. 45, ¶ 9, 695 N.W.2d 235, 239. "A grant of authority includes those incidental or implied powers that are necessary to enable a municipality to perform the function authorized." *Id.* (citations omitted). Because cities have "no inherent powers, and none of the attributes of sovereignty," the scope of their implied powers falls under "a reasonably strict standard." *Id.* "Whatever latitude these implied powers might include will depend upon the circumstances of each case." *Id.*

---

(. . . continued)
> whether within or without the corporate limits, and in and over all places, except within the corporate limits of another [city], within one mile of the corporate limits or of any public ground or park belonging to the [city] outside the corporate limits, for the purpose of promoting the health, safety, morals, and general welfare of the community, and of enforcing its ordinances and resolutions relating thereto.

4.    SDCL 32-14-5 provides:

> Local authorities may provide by ordinance for the regulation of traffic on highways under their jurisdiction by means of traffic officers or traffic control devices on any portion of the highway where traffic is heavy or continuous or local authorities may prohibit other than one-way traffic upon certain highways and may regulate the use of the highway by processions or assemblages.

[¶6.]  We acknowledge that the four statutes Colman relies on give a city the power to regulate certain traffic within its jurisdiction. But we must view the city's limited jurisdiction in the context of the broader jurisdictional scheme of the state highway system. The Legislature categorizes state highways as: (1) municipal streets and alleys; (2) state trunk highways; (3) county highways; and, (4) secondary highways. *See* SDCL 31-1-4.

[¶7.]  The Legislature also "clarif[ies] the duties and powers of the various governmental state agencies charged with the administration of the highways in South Dakota." SDCL 31-1-5.[5] The Legislature charges the Department of Transportation with the "control[ ] and supervis[ion]"of "highways designated by statute" as the "state trunk system." SDCL 31-1-5(1). County commissioners

---

5.  SDCL 31-1-5 provides:

    For the purpose of clarifying the duties and powers of the various governmental state agencies charged with the administration of the highways in South Dakota, the following definitions of highway systems shall be applicable:
    (1) "State trunk system," the highways designated by statute to be controlled and supervised by the Department of Transportation;
    (2) "County highway system," the highways designated by the board of county commissioners in organized counties under the supervision of these bodies that have been approved by the Department of Transportation;
    (3) "Township highways," the secondary highways in organized townships that are administered by a board of township supervisors;
    (4) "County secondary highways," the rural local highways in organized counties, excluding the approved county highway system, that are under the supervision of a board of county commissioners.

oversee county and secondary highways, and township supervisors administer township highways. *Id.*

[¶8.]     Additionally, the Legislature specifically gives the State Transportation Commission, a commission in the South Dakota Department of Transportation, the authority to regulate speed limits on the state trunk highway system. SDCL 1-44-4; SDCL 32-25-7. State law outlines how speed limits on state trunk highways are set and what penalties exist for violations:

> The Transportation Commission may establish, by rules promulgated pursuant to chapter 1-26, a maximum speed limit of less than that established by §§ 32-25-1.1 and 32-25-4 upon any highway or portion of highway on the state trunk highway system and any portion of highway under the jurisdiction of a state or federal agency if requested by the agency. The speed limit established by the commission is the maximum speed that any person may drive or operate any vehicle or class of vehicle upon that portion of highway. The Department of Transportation shall conspicuously post signs at the beginning and end of a portion of highway to show the maximum speed limit established by the commission on that portion of highway. A violation of any maximum speed limit established by the commission pursuant to this section is a Class 2 misdemeanor.

SDCL 32-25-7.

[¶9.]     The Legislature's overall scheme and apportionment of authority over the various highways signals legislative intent to preempt the field. This scheme confines a city's authority to the "streets and alleys within the limits of municipal corporations." SDCL 31-1-4. Other highways are under the supervision and control of other governmental agencies. *See* SDCL 31-1-5. Notably, the Legislature gives the control and supervision of a state trunk highway, such as Highway 34, to the State Department of Transportation and the specific power to set speed limits to the State Transportation Commission. SDCL 31-1-5(1). This delegation of control and

supervision of state trunk highways to state agencies demonstrates the Legislature's intent in this field.

[¶10.] We have said that one way to determine if a state law preempts a local ordinance is to look at whether the state law "occup[ies] a particular field to the exclusion of all local regulation." *In re Yankton County Com'n*, 2003 S.D. 109, ¶ 15, 670 N.W.2d 34, 39. We find preemption if "the scheme of [state] regulation is sufficiently comprehensive to make [a] reasonable [ ] inference that [the Legislature] 'left no room' for supplementary [city] regulation." *Id.* ¶ 16, 670 N.W.2d at 39.

[¶11.] Here, the regulatory scheme gives control of state trunk highways to a state agency. The speed limits are set by a state agency and violations are state offenses. Moreover, the Legislature has not expressly authorized cities to regulate speed limits on state trunk highways. *See* SDCL 32-14-3. A reasonable inference drawn from the statutes is that the Legislature intended to "occupy the field" of regulating state trunk highways and did not intend to leave "room for supplementary [city] regulation[.]" *See Yankton County Com'n*, 2003 S.D. 109, ¶ 21, 670 N.W.2d at 41. Consequently, we hold that Colman did not have authority to enforce a city speed limit ordinance on state Highway 34.

[¶12.] Affirmed.

[¶13.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and SEVERSON, Justices, concur.