#25897-a-JKK

**2011 S.D. 63**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

| | |
|---|---|
| RICK LAW, | Plaintiff and Appellee, |
| v. | |
| CITY OF SIOUX FALLS, | Defendant and Appellant, |
| v. | |
| SOUTH DAKOTA LOTTERY, A DIVISION OF THE DEPARTMENT OF REVENUE AND REGULATION, STATE OF SOUTH DAKOTA, | Intervenor and Appellee. |

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE  SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICIA C. RIEPEL
Judge

* * * *

| | |
|---|---|
| WILLIAM E. BLEWETT MARK V. MEIERHENRY of Meierhenry Sargent, LLP Sioux Falls, South Dakota | Attorneys for plaintiff and appellee Rick Law. |
| MARK J. ARNDT of May & Johnson, PC Sioux Falls, South Dakota | Attorneys for defendant and appellant. |
| ANDREW L. FERGEL of South Dakota Department of Revenue   and Regulation Pierre, South Dakota | Attorney for intervenor and appellee South Dakota Lottery. |

* * * *

ARGUED ON AUGUST 24, 2011

OPINION FILED **09/21/11**

#25897

KONENKAMP, Justice

[¶1.]          The City of Sioux Falls enacted a zoning ordinance controlling the location of new on-sale alcoholic beverage businesses seeking to place video lottery machines in their establishments.  In a declaratory action, the circuit court ruled that the City exceeded its authority when it enacted the ordinance.  The court concluded that South Dakota's constitutional and statutory scheme indicated that the State intended to fully occupy the field of video lottery, to the exclusion of municipal regulation.  We affirm.

## Background

[¶2.]          On February 8, 2007, Rick Law filed an application with the City of Sioux Falls to be on its waiting list for an on-sale alcoholic beverage permit under SDCL 35-4-2(4).  On July 10, 2009, the City offered Law a liquor license.  Between the time Law was placed on the waiting list and when the City offered him a license, the City adopted Zoning Ordinance 60-80, Section 6, to become effective June 5, 2008.  This ordinance modified certain sections of Appendix B of the Sioux Falls Code of Ordinances related to conditional use permits for on-sale alcoholic beverage establishments.[1]  In particular, the ordinance required that an on-sale

---

1.     An on-sale alcoholic beverage establishment may be permitted provided it is found that the location:

> (1) Will not create an undue concentration of similar uses.
>
> (2) It is not in an area where unattended children could be expected to frequent, patronize, or recreate.
>
> (3) It is compatible with characteristics of surrounding uses, and not injurious to surrounding properties.
>
> (continued . . .)

-1-

alcoholic beverage business seeking to place video lottery machines in the establishment must meet certain location requirements and apply for a conditional use permit with the City Planning Commission.

[¶3.]     Aware of this new ordinance, Law conditionally accepted the license, but did not apply for a conditional use permit because he believed each of his proposed locations would fail under the requirements of Ordinance 60-80. Law brought a declaratory action against the City to determine the constitutionality of Ordinance 60-80. He alleged that the City exceeded its authority when it enacted the ordinance, as the State had fully occupied the field of video lottery regulation, preempting any municipal regulation. The City countered that Ordinance 60-80 does not regulate video lottery, but is a zoning ordinance, enacted through a valid exercise of the City's police powers. The South Dakota Lottery, a Division of the Department of Revenue and Regulation, was permitted to intervene in the action.

_____
(. . . continued)

> (4) Video lottery machine placement is not within 2,000 feet of any city park, other video lottery machine placement, or any elementary or secondary school within the city as measured from the closest point of the outside wall of either of such buildings or tenant space or the boundary of any park. The provisions of this section shall apply to any new video lottery placement authorized after June 1, 2008, unless a valid application for a conditional use permit, including video lottery terminals, shall have been filed with the City prior to that date for an alcoholic beverage license authorized pursuant to SDCL 35-4-2(4) for which the applicant received notice of eligibility in 2008.

Ordinance 60-80, Section 6.

[¶4.] After a hearing, the circuit court issued a memorandum opinion and findings of fact and conclusions of law. The court ruled that the City exceeded its authority when it enacted Ordinance 60-80, because the Legislature intended that the State "occupy the field of video lottery regulation to the exclusion of municipal regulations as shown by the Constitution and the broad statutory scheme regarding video lottery regulation." The City appeals.

## Analysis and Decision

[¶5.] Interpretation of an ordinance and related constitutional provisions present questions of law, reviewed de novo. *City of Marion v. Schoenwald*, 2001 S.D. 95, ¶ 8, 631 N.W.2d 213, 216-17 (citations omitted). We must decide anew whether Ordinance 60-80 is a valid exercise of municipal power.

[¶6.] The City advances multiple reasons why the court erred in deeming Ordinance 60-80 unconstitutional. First, it argues that Ordinance 60-80 is valid because South Dakota law authorizes municipalities to adopt zoning ordinances regulating and restricting the location and use of buildings for the "purpose of promoting health, safety, or the general welfare of the community[.]" *See* SDCL 11-4-1. In the City's view, Ordinance 60-80 does not regulate video lottery, but controls, through zoning, the location and use of buildings housing video lottery machines in order to protect the health, safety, and general welfare of City residents. Along the same lines, the City also asserts that because Ordinance 60-80 does not undermine or conflict with the Legislature's video lottery statutory scheme, it is a valid municipal regulation under the concept of home rule, whereby a home-rule chartered municipality may impose stricter standards than those imposed by

state law. *See* SDCL 6-12-5. Third, the City argues that although there is a comprehensive legislative scheme regulating video lottery, the Legislature enacted no law controlling the specific location of video lottery machines. Therefore, according to the City, it is unreasonable to infer that the Legislature intended to occupy the entire field of video lottery regulation, preempting any municipal regulation restricting the location of video lottery machines. Finally, the City maintains that if this Court finds that the Legislature has occupied the field of video lottery to the exclusion of municipal regulation, the Legislature violated article III, section 26 of our constitution when it delegated control of video lottery machine location within a municipality to a special commission, the South Dakota Lottery Commission.

[¶7.] In response, Law asserts that the only reasonable interpretation of the South Dakota Constitution and the video lottery legislative scheme is that the Legislature intended to solely occupy the field of video lottery, preempting any municipal regulation. Law points out that until 1986, video lottery was illegal in South Dakota. *See* S.D. Const. art. III, § 25. When our constitution was amended to allow gambling, the constitution made clear that it would be "regulated by the state of South Dakota[.]" *Id.* Law points to the statutes enacted by the Legislature related to video lottery. *See* SDCL ch. 42-7A. In his view, those statutes give only state agencies the power to control, manage, and regulate video lottery. Thus, relying on the constitution and SDCL ch. 42-7A, Law maintains that the Legislature made no room for supplementary municipal regulation.

[¶8.]		The Lottery, in agreement with Law's arguments, further points out that the Legislature intended to fully occupy the field of video lottery regulation because the "Legislature has crafted only two exceptions that allow a municipality to influence video lottery machine placement." *See* SDCL 42-7A-64. When issuing an on-sale alcoholic beverage license under SDCL 35-4-2(12) and (16), a municipality may consider certain criteria related to video lottery placement. *See* SDCL 42-7A-64. In light of the "narrow circumstances (i.e. two types of alcohol licenses) in which a municipality may assert its influence upon video lottery location," the Lottery contends that the Legislature understood "that the regulation of video lottery — including its location — is a field occupied by the State." The Lottery also argues that the Legislature did not improperly delegate power to a "special commission" in violation of article III, section 26: the Lottery is a division of the South Dakota Department of Revenue and Regulation, not a special commission. Moreover, it contends that by delegating control of video lottery to the Lottery, the Legislature has not interfered with any municipal function, as municipalities maintain their zoning authority to control the location of alcoholic beverage establishments.

[¶9.]		A municipality may exercise any power or perform any function not prohibited by our constitution and laws. S.D. Const. art. IX, § 2. Yet we have repeatedly noted that municipal corporations possess only those powers given to them by the Legislature. *State ex rel. Jackley v. City of Colman,* 2010 S.D. 81, ¶ 5, 790 N.W.2d 491, 493; *Elkjer v. City of Rapid City,* 2005 S.D. 45, ¶ 9, 695 N.W.2d 235, 239; *Olesen v. Town of Hurley*, 2004 S.D. 136, ¶ 15, 691 N.W.2d 324, 328; *City*

*of Rapid City v. Rensch*, 77 S.D. 242, 246, 90 N.W.2d 380, 383 (1958). Therefore, while a municipality clearly has the power to enact zoning ordinances, SDCL 9-19-3; SDCL ch. 11-4, no municipality may enact a law regulating a subject where the State has wholly occupied the field of that subject, to the exclusion of any local regulation. *See Minn. Agric. Aircraft Ass'n v. Twp. of Mantrap*, 498 N.W.2d 40, 42 (Minn. Ct. App. 1993). It is of no consequence that a municipality's regulation coincides with or is complementary to the state law; a municipality is precluded from enacting any regulation related to the subject preempted. *Id.*

[¶10.] Field preemption by state law can be either express or implied. *Sarasota Alliance for Fair Elections, Inc. v. Browning*, 28 So. 3d 880, 886 (Fla. 2010); *Fogle v. H & G Rest., Inc.*, 654 A.2d 449, 464 (Md. Ct. App. 1995); *Minn. Agric. Aircraft Ass'n*, 498 N.W.2d at 42. Express preemption occurs when there is a specific legislative enactment reflecting the Legislature's intent to preempt any local regulation. *Sarasota Alliance*, 28 So. 3d at 886. Implied preemption, on the other hand, exists when the legislative scheme "is sufficiently comprehensive to make reasonable the inference that" the Legislature "'left no room' for supplementary" local regulation. *In re Yankton Cnty. Comm'n*, 2003 S.D. 109, ¶ 16, 670 N.W.2d 34, 39 (citation omitted) (quoting *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713, 105 S. Ct. 2371, 2375, 85 L. Ed. 2d 714 (1985)); *see also Jackley,* 2010 S.D. 81, ¶ 10, 790 N.W.2d at 494. Because there is no specific enactment expressing the Legislature's intent to preempt local regulation of video lottery, we must review the legislative scheme for implied preemption. In doing so, we look to the provisions of the entire law, and not any particular statute in

isolation. *See Sarasota Alliance*, 28 So. 3d at 886. We also will consider the object sought to be attained by the laws, the nature and power exerted by the Legislature, and the character of the obligations imposed by the statutes. *See id.*; *see also Idaho Dairymen's Ass'n, Inc. v. Gooding Cnty.*, 227 P.3d 907, 913 (Idaho 2010).

[¶11.] Gambling was illegal in South Dakota until our constitution was amended in 1986. The amendment legalizing gambling specifically provided that it would be "regulated by the State of South Dakota[.]" *See* S.D. Const. art. III, § 25. Under that authority, the Legislature enacted SDCL ch. 42-7A. After defining certain terms, the Legislature specifically provided that "[t]he overall management of the state lottery and control over the operation of its games shall rest solely with the South Dakota Lottery," which is a division of the Department of Revenue and Regulation. SDCL 42-7A-2. The Legislature also provided that an executive director shall administer the state lottery as set forth in SDCL ch. 42-7A. *Id.* In so administering, "[t]he executive director may approve or disapprove any application for license . . . depending upon . . . whether the executive director considers the *proposed location suitable.*" SDCL 42-7A-57 (emphasis added). There is no similar statute creating municipal administration, operation, or control over the lottery.[2]

---

2.  The remaining statutes indicate only legislative control. The Legislature defined the functions of the executive director, SDCL 42-7A-4, -6, -8, -10, gave the executive director the right to consider the suitability of a proposed location when making a license decision, SDCL 42-7A-57, enacted many regulations related to the sale of lottery tickets, including identification of crimes, SDCL 42-7A-24; SDCL 42-7A-30 to -34, created the South Dakota Lottery Commission, giving it the power to establish a policy for the operation of the state lottery, SDCL 42-7A-17 to -21, established a video lottery operating fund, SDCL 42-7A-41.1, allowed for the employment of investigative personnel to enforce licensing and rules, SDCL 42-7A-25, -26,

(continued . . .)

*See Idaho Dairymen's Ass'n, Inc.*, 227 P.3d at 913 (some regulation power given to counties). In fact, in SDCL 9-29-5, the Legislature expressly stated that municipalities may not suppress lotteries "owned and operated by this state." From the whole law, it is reasonable to infer that the Legislature intended the State to have all power to control, regulate, and manage video lottery.

[¶12.] The object sought to be attained by the laws also confirms that the Legislature intended to fully control video lottery. The Legislature mandated that "[i]n all decisions, the executive director and commission shall take into account the particularly sensitive nature of the lottery, and shall act to promote and ensure the integrity, security, honesty, and fairness of its operation and administration." SDCL 42-7A-2. This manifest objective appears also in SDCL 42-7A-56:

> (1) The success of the South Dakota Lottery is dependent upon public confidence and trust that it is conducted honestly and free from criminal and corruptive elements;
>
> (2) Public confidence and trust can only be maintained by strict regulation of all persons, locations, practices, associations, and activities related to the sale of lottery products and the operation, manufacturing, and distribution of video lottery games and equipment; and
>
> (3) No applicant for a license or other affirmative commission action has any right to a license or to the granting of the approval sought. Any license issued or other commission approval granted pursuant to the provisions of this chapter is a

---

(. . . continued)
identified the requirements for licensing video lottery establishments, restrictions on such establishment, fees for licensing, and other requirements, SDCL 42-7A-37 to -40; SDCL 42-7A-41.2 to -44; SDCL 42-7A-49 to -52, identified certain crimes related to video lottery, SDCL 42-7A-45 to -48, declared the public policy of the State related to South Dakota Lottery, SDCL 42-7A-56, and requirements related to licensing applications, SDCL 42-7A-57 to -59, -64.

> revocable privilege, and no holder acquires any vested interest
> or property right therein or thereunder.

[¶13.]     Although there is no express legislative directive controlling video lottery to the exclusion of local regulation, the scope and power exerted by the Legislature and the character of the obligations imposed by its statutes reflect legislative intent to be exclusive in the field.  As previously stated, the Legislature created the South Dakota Lottery and required an executive director to operate, manage, and control the Lottery.  To guide the Lottery and executive director, the Legislature enacted requirements for video lottery machines, SDCL 42-7A-37, and restrictions on licensed establishments, SDCL 42-7A-37.1.  It specifically gave only the executive director the power to approve or disapprove any application for a license.  SDCL 42-7A-57.  In doing so, it provided that the director consider the application's proposed *location.  Id.*  The Legislature also limited the amounts that can be played on the video lottery machines, and the amount of prizes awarded.  SDCL 42-7A-38.  The Legislature required that any person licensed as a video lottery machine manufacturer, distributor, operator, or lottery retailer submit to a background investigation.  SDCL 42-7A-43.  It also dictated the number of lottery machines that may be in a licensed establishment, the placement of such machines, SDCL 42-7A-44, the age limit for players, and the permitted hours of operation, SDCL 42-7A-48.  In only one statute is a municipality given any power with regard to video lottery.  SDCL 42-7A-64 allows a municipality to consider, when issuing two types of on-sale alcoholic beverage licenses, certain factors relevant to the placement of video lottery machines.  Municipalities, however, are not given any

power to license video lottery establishments, or otherwise control the location of such establishments. *See* SDCL 42-7A-64.

[¶14.] Based on the character of the obligations imposed by the Legislature, we see no delegation of power or responsibilities to municipalities and no entrusting to municipalities the control video lottery. Rather, the statutes place all burdens upon the State. Thus, we conclude that South Dakota's legislative video lottery scheme is sufficiently comprehensive to make reasonable the inference that the Legislature left no room for supplementary regulation of video lottery by municipalities. It is immaterial that the City is governed by a home-rule charter or empowered to enact zoning regulations. Once the City enacted Ordinance 60-80, regulating the placement of video lottery machines, the City exceeded its authority. Of course, if we have misread the intent behind the video lottery statutes, the Legislature remains free to amend its enactments to clarify its intent.

[¶15.] Lastly, the City argues that if this Court finds that Ordinance 60-80 is preempted by state law, the Legislature improperly delegated control of video lottery placement to the South Dakota Lottery Commission in violation of article III, section 26 of our constitution. That section provides,

> The Legislature shall not delegate to any *special commission*, private corporation or association, any power to make, supervise or interfere with any *municipal* improvement, money, *property*, effects, whether held in trust or otherwise, or levy taxes, or to select a capital site, or to perform any municipal functions whatever.

S.D. Const. art. III, § 26 (emphasis added). From the City's perspective, SDCL ch. 42-7A interferes with municipal property by delegating to the Lottery the City's power to control zoning for a particular industry, in this case video lottery.

[¶16.]    The Lottery, on the other hand, argues that the Legislature did not delegate any powers to a "special commission." Rather, the power to control, manage, and regulate video lottery is vested with the South Dakota Lottery, a *division* of the Department of Revenue and Regulation. The Lottery asserts that, as a division of the Department of Revenue and Regulation, it is much like the Department's Motor Vehicles Division, Property Tax Division, Business Tax Division, and Special Taxes Division. The Lottery also maintains that no municipal function has been delegated by the Legislature through the video lottery regulatory scheme, since the City is still empowered to zone and dictate where alcoholic beverage establishments may or may not be located.

[¶17.]    We need not decide whether the South Dakota Lottery Commission is the type of special commission prohibited in article III, section 26 of our constitution. There is no evidence that the Legislature has interfered with any municipal property or function by its enactments. Nor has the Legislature conferred upon the South Dakota Lottery Commission any ordinary municipal function. Municipalities do not have the freedom or power to regulate video lottery, as the South Dakota Constitution specifically reserves that right to the State of South Dakota. And the City has presented no evidence that the regulation of video lottery is uniquely a municipal concern. In accord with SDCL ch. 42-7A, municipalities still have the power to control, through zoning, the location of alcoholic beverage establishments.

[¶18.]    Affirmed.

#25897

[¶19.] GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and SABERS, Retired Justice, concur.

[¶20.] SABERS, Retired Justice, sitting for MEIERHENRY, Retired Justice, disqualified.

[¶21.] WILBUR, Justice did not participate.