#28932-a-MES
**2020 S.D. 50**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

CITY OF RAPID CITY,                                    Plaintiff and Appellee,

    v.

RODNEY P. SCHAUB,                                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JANE WIPF PFEIFLE
Judge

* * * *

KINSLEY P. GROOTE
Assistant City Attorney
Office of the City Attorney
Rapid City, South Dakota                 Attorneys for plaintiff
                                         and appellee.


RODNEY P. SCHAUB
Rapid City, South Dakota                 Pro Se Defendant and
                                         Appellant.

* * * *

CONSIDERED ON BRIEFS
SEPTEMBER 30, 2019
OPINION FILED **09/02/20**

#28932

SALTER, Justice

[¶1.]    Rodney Schaub appeals the circuit court's decision to affirm his magistrate court conviction for operating an onsite wastewater system without a permit.  We affirm.

## Background

[¶2.]    Rodney Schaub owns real estate, including a home, that is located northeast of Rapid City, within one mile of the municipal boundaries.  Schaub's property is not connected to a municipal sewer system, and he instead relies upon an onsite wastewater system.  In 2006, Rapid City (the City) adopted an ordinance requiring owners of onsite wastewater systems to obtain sewer permits.  The permits are renewable every six years after the owners have their systems pumped empty and inspected by the City's public works director or a designee.[1]  Citing its

---

1.    Rapid City Municipal Code (RCMC) 13.20.800-Sewerage System Permits provides in relevant part that:

      A. All owners of onsite wastewater systems are required to obtain sewerage permits before being allowed to operate and maintain such systems.  Permit terms shall be as follows:

          1. Individual onsite wastewater systems, small onsite wastewater systems and mound systems -6 years:

      * * * *

      E. The city will send a permit renewal notice by mail to the owner of record prior to the expiration date of each sewerage permit.  Upon notification of permit expiration, the owner of the permitted disposal system shall have 30 calendar days to schedule an observation of the system with a city approved observer.

          1. Prior to observation, the septic tank must be pumped.

          2. The tank shall be observed prior to the tank filling with liquid.

(continued . . .)

#28932

extraterritorial jurisdiction, the City sought to apply the ordinance to landowners within one mile of its exterior boundaries.

[¶3.]     During 2016, the City sent Schaub three notices explaining the requirement to have his system inspected and to ultimately obtain a permit. After receiving no response, the City sent Schaub another letter by certified mail in April 2017. Schaub spoke in person with the City's septic coordinator, who explained the permit process and the appeals process. After an unsuccessful effort to obtain a waiver exempting his wastewater system from the City's ordinance, Schaub failed to comply with an August 31, 2017 deadline to have his septic system inspected.

[¶4.]     The City Attorney's Office formally charged Schaub with maintaining an onsite wastewater system without a permit in January 2018. Following a magistrate court trial on September 25, 2018, Schaub was convicted for failure to obtain a permit in violation of RCMC 13.20.800. The court fined Schaub $200 and ordered him to pay $60 in court costs.[2]

_____

(. . . continued)

  3. The Public Works Director or his or her designee may extend a permit for up to 6 years if proof is provided that the tank has been pumped and inspected by a city approved observer or city personnel.

  4. It is the owner's responsibility to schedule said pumping with a liquid waste hauler prior to the expiration of the sewerage permit . . . .

2. The magistrate court imposed Schaub's fine based upon two ordinances related to RCMC 13.20.800. The first is RCMC 13.20.870 which provides, in relevant part, that "[a]ny person who shall fail to comply with any of the provisions of this chapter, or who shall counsel, aid, and/or abet any such violation or failure to comply, shall be subject to the general penalty provision as set forth in§ 1.12.010 of this code." The provisions of RCMC 1.12.010, in

(continued . . .)

-2-

[¶5.] Schaub appealed his conviction to the circuit court, arguing RCMC 13.20.800: (1) violates the ex post facto clauses of the United States Constitution and the South Dakota Constitution; (2) is preempted by state administrative rules; and (3) exceeds the City's authority since he lives outside of the city limits. The circuit court affirmed Schaub's conviction, finding that the City's sewerage permit ordinance is not an ex post facto law. The court further determined that South Dakota statutes allow a municipality to promulgate more stringent laws than state administrative regulations, and the City has statutory authority to enforce its sewerage permit requirement against Schaub.

[¶6.] Schaub raises three issues on appeal that we restate as follows:

1. Whether the circuit court erred when it determined that the City's sewerage permit ordinance is not an ex post facto law.

2. Whether the circuit court erred when it determined that state administrative regulations set minimum standards and the City was authorized to enact more stringent sewerage ordinances.

3. Whether the circuit court erred when it determined that the City could enforce sewerage ordinances upon residents living within one mile of the City's boundaries.

---

(. . . continued)
turn, authorize punishments for ordinance violations of "not less than $1 nor more than $500 or 30 days in jail, or both."

**Analysis**

### *Ex Post Facto Claim*

[¶7.]	The United States Constitution and South Dakota Constitution both prohibit the passage of an ex post facto law,[3] which is defined as "[a] statute that criminalizes an action and simultaneously provides for punishment of those who took the action before it had legally become a crime . . . ." *Ex Post Facto Law*, Black's Law Dictionary (11th ed. 2019).  We have previously held that "a statute . . . is not rendered unconstitutional as an ex post facto law merely because it might operate on a fact or status preexisting the effective date of the legislation, as long as its punitive features apply only to acts committed after the statutory proscription becomes effective."  *State v. Smith*, 2014 S.D. 15, ¶ 16, 844 N.W.2d 626, 630 (quoting *State v. Arguello*, 2002 S.D. 157, ¶ 14, 655 N.W.2d 451, 454).[4]

[¶8.]	Here, Schaub's ex post facto argument is not supportable.[5]  The record

---

3.	U.S. Const. art. I, § 9, cl. 3; S.D. Const. art. VI, § 12.

4.	We review constitutional challenges de novo.  *Smith*, 2014 S.D. 15, ¶ 15, 844 N.W.2d at 629.

5.	The City argued to the circuit court, and does again in this appeal, that Schaub failed to preserve his ex post facto claim by not pursuing it during his magistrate court trial.  The circuit court rejected the argument by relying upon SDCL 23A-32-13, which states that a defendant can challenge "the constitutionality of any statute" under which he was convicted "on appeal regardless of whether it was first raised in any lower court."  In its brief to this Court, the City claims the text of the statute limits its applicability only to statutes—not municipal ordinances.  We think it is unnecessary to construe the text of SDCL 23A-32-13 because the record indicates that Schaub sufficiently raised the issue to the magistrate court.  Proceeding pro se, Schaub specifically argued to the magistrate court that the law was "ex post facto," explaining that "what used to be legal" was now different under the new ordinance that required "this permitting and pumping . . . ."  Under

(continued . . .)

establishes that Schaub's failure to obtain a permit for his onsite wastewater system occurred in 2018—*well after* the City enacted its onsite wastewater system ordinance in 2006.[6] To be considered an ex post facto law, Schaub would need to show that he was convicted for conduct committed *before* the ordinance was enacted in 2006.[7] In other words, the fact that Schaub's onsite wastewater system may have existed prior to 2006 does not, itself, excuse him from the requirement to comply with the ordinance.

[¶9.] Schaub's reliance *on Lamar Outdoor Advertising, Inc. v. City of Rapid City* to support his argument that RCMC 13.20.800 is an ex post facto law is misplaced. 2007 S.D. 35, 731 N.W.2d 199. In *Lamar*, we held that a city council acted within its authority when it allowed a sign company to complete a project initiated under the provisions of the then-existing city sign ordinance. *Id.* ¶ 25, 731 N.W.2d at 205. The *Lamar* decision did not involve an ex post facto argument or discussion.

[¶10.] Nevertheless, Schaub believes his position is buoyed by our generic statement that "zoning laws may not be retroactively applied so as to deprive property owners of prior vested rights by preventing a use that was lawful before the enactment of zoning laws." *Id.* His suggestion that the City is retroactively

_____

(. . . continued)

the unique circumstances present here, we think this adequately raised the argument.

6. The complaint charged Schaub with a violation of the onsite wastewater disposal ordinance "on or about the 30th day of January, 2018 . . . ."

7. The ordinance was originally numbered 13.09.800 when it was enacted in 2006 and was renumbered as 13.20.800 in 2012.

applying RCMC 13.20.800 and divesting him of a property right is unconvincing.

[¶11.] The City is not applying the ordinance retroactively, as we have indicated. Beyond that, Schaub has not established that he has a vested property right in operating his onsite wastewater system free of the City's inspection and permit requirements—the only obligations imposed by RCMC 13.20.800 that are at issue here. Indeed, these basic requirements contemplate that Schaub can continue to operate his existing system.

### *Preemption Claim*

[¶12.] "The interpretation of an ordinance presents a question of law reviewable de novo." *Parris v. City of Rapid City*, 2013 S.D. 51, ¶ 10, 834 N.W.2d 850, 854 (quoting *Atkinson v. City of Pierre*, 2005 S.D. 114, ¶ 10, 706 N.W.2d 791, 795). "Administrative regulations are subject to the same rules of construction as are statutes." *Krsnak v. S.D. Dep't of Env't & Natural Res.*, 2012 S.D. 89, ¶ 16, 824 N.W.2d 429, 436 (quoting *Westmed Rehab, Inc. v. Dep't of Soc. Servs.*, 2004 S.D. 104, ¶ 8, 687 N.W.2d 516, 518).

[¶13.] Generally, "municipal corporations possess only those powers given to them by the Legislature[,]"[8] and it is possible for the Legislature to preempt a city's regulatory efforts, either expressly or impliedly. *Law v. City of Sioux Falls*, 2011 S.D. 63, ¶ 9, 804 N.W.2d 428, 432.

---

8. *See Ericksen v. City of Sioux Falls*, 70 S.D. 40, 53, 14 N.W.2d 89, 95 (1944) ("A municipal corporation is a creature of the Constitution and statutes of the state. It possesses only such powers, great or small, as these laws give to it . . . .").

> Express preemption occurs when there is a specific legislative enactment reflecting the Legislature's intent to preempt any local regulation. Implied preemption, on the other hand, exists when the legislative scheme "is sufficiently comprehensive to make reasonable the inference that" the Legislature "left no room for supplementary" local regulation.

*Id.* ¶ 10, 804 N.W.2d at 432 (citation omitted).

[¶14.] As is relevant to our discussion here, Chapter 74:53:01 of South Dakota's administrative rules (ARSD) contains regulations promulgated by the Department of Environmental and Natural Resources (DENR) concerning "Individual and Small on-Site Wastewater Systems."[9] Among other things, ARSD Chapter 74:53:01 establishes specifications and requirements for onsite wastewater treatment systems, including septic tank systems. *See* ARSD 74:53:01:23 (prescribing "minimum design and construction requirements for septic tanks"). However, these specifications and requirements may not apply to systems that existed prior to February 28, 1975, by virtue of ARSD 74:53:01:04. This provision provides in part that these existing systems "are not subject to this chapter unless the systems are changed, the systems cause the groundwater to become polluted, or the systems are allowing wastewater to surface." The parties differ markedly in their views about the applicability of this administrative provision to this case.

[¶15.] Schaub claims ARSD 74:53:01:04 effectively "grandfather[s]" his onsite wastewater system into compliance and argues further that this regulation has a preemptive effect that categorically prohibits local regulation of his system by

---

9. Under SDCL 34A-2-20, the Legislature directed the DENR's Water Management Board to "establish minimum requirements for the treatment of wastes." *See* SDCL 1-40-15 (creating "a Water Management Board within the Department of Environment and Natural Resources").

municipalities.[10]  The City, for its part, contends that the regulations contained in ARSD Chapter 74:53:01 merely prescribe minimum standards, leaving municipalities free to prescribe "more stringent" standards.  We are not convinced that either argument guides our consideration of this issue.

[¶16.]  Initially, Schaub has not established that his system fits within the date restriction of ARSD 74:53:01:04.  Like the circuit court, we see no evidence in the record to indicate that Schaub's septic system was "existing prior to February 28, 1975[,]" and his preemption claim fails on this basis alone.  However, even if the state of the record were otherwise and reflected evidence that Schaub's system existed before the regulation's cutoff date, his preemption argument is not persuasive.

[¶17.]  The text of ARSD 74:53:01:04 generally exempts certain existing onsite wastewater systems from the technical specifications and requirements of ARSD Chapter 74:53:01, but none of those standards are at issue in this municipal prosecution for violating RCMC 13.20.800.  The City's complaint charged Schaub with violating RCMC 13.20.800 by failing to "obtain[ ] a sewerage permit[,]" and the magistrate court found Schaub guilty of failing to secure the permit.  Even if ARSD 74:53:01:04's exemption for existing wastewater systems were preemptive, and we do not hold that it is, the exemption from the requirements of ARSD Chapter 74:53:01 does not implicate the City's inspection and permitting process, which may

---

10.  The City argues Schaub has not raised a preemption argument on appeal, but we read his pro se appellate brief differently.  In it, Schaub unmistakably invokes ARSD 74:53:01:04 as the preeminent and exclusive authority governing regulatory efforts for certain existing onsite wastewater treatment systems.

well require *no* changes to Schaub's existing septic system. Indeed, we are not confronted here with an effort by the City to impose *different* standards than those required under ARSD Chapter 74:53:01 because RCMC 13.20.800 *does not contain standards*—just the requirements to obtain a permit and have the system inspected.[11]

[¶18.] For this reason, we believe it is unnecessary to consider the City's argument that ARSD Chapter 74:53:01 states only minimal requirements, which by extension leaves municipalities free to adopt more stringent requirements. The circuit court adopted this view and cited as support SDCL 6-12-5, which expressly allows municipal "standards and requirements which are higher or more stringent than those imposed by state law . . . ." However, as Schaub notes, this statute is contained within SDCL Chapter 6-12, which deals with local governments organized under home rule charters. *See* S.D. Const. art. IX, § 2 (authorizing "[a]ny county or city or combinations thereof" to adopt a home rule charter which "may exercise any legislative power or perform any function not denied by its charter, the Constitution or the general laws of the state."). Though the City endorses the court's "more stringent than state law" rationale on appeal, it does not rely upon

---

11. Schaub's suggestion that ARSD 74:53:01:04 applies broadly and allows him to operate his onsite wastewater system free of any effort to inspect it is unsound. The regulation does not categorically exempt pre-February 28, 1975 onsite wastewater systems from regulation. Instead, they are exempt "*unless* the systems are changed, the systems cause the groundwater to become polluted, or the systems are allowing wastewater to surface." (Emphasis added.) At a minimum, Schaub's system would be subject to an inspection by the DENR to determine if any of these exceptions applied and required compliance with the standards of ARSD Chapter 74:53:01. *See* ARSD 74:53:01:42 (authorizing DENR secretary or an authorized representative to inspect an onsite wastewater system "at any time").

SDCL 6-12-5.[12] Regardless, we need not decide whether SDCL 6-12-5 reflects a universal or narrow rule for municipal governments based on its form of government. We have already determined that RCMC 13.20.800 does not, itself, require standards for onsite wastewater systems and therefore does not conflict with state administrative regulations.[13]

### *The City's Extraterritorial Authority*

[¶19.] The Legislature has given municipalities the express authority to protect their water supplies "within one mile of the limits of the municipality." SDCL 9-32-8; *see also Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 75, 99 S. Ct. 383, 392, 58 L. Ed. 2d 292 (1978) (upholding city's enforcement of its police power beyond city limits against due process and equal protection claims). Utilizing this authority, the City enacted RCMC 13.20.800 to help ensure a safe and reliable water supply for its citizens.[14] It is undisputed that Schaub lives within the one-mile perimeter of the City. We therefore find no merit in Schaub's argument that the City lacks authority to enforce RCMC 13.20.800 beyond its municipal boundaries.

---

12. The record does not indicate that the City operates under a home rule charter.

13. Without any apparent reference to chartered status, the Legislature has given municipalities the power to "adopt ordinances for the purposes of protecting public groundwater supplies from pollution." SDCL 9-12-17.

14. In addition, SDCL 9-29-1 provides municipalities with broad police power authority within one mile of the city limits. We upheld this authority in *State v. Hirsch*, 309 N.W.2d 832 (S.D. 1981), when a city police officer arrested a driver for driving under the influence within one mile of the city limits.

## Conclusion

[¶20.] The City's ordinance as applied to Schaub is not an ex post facto law because it punishes Schaub for conduct occurring after the ordinance was enacted. Furthermore, the City's effort to enforce RCMC 13.20.800 was authorized under the facts presented here. We affirm.

[¶21.] GILBERTSON, Chief Justice, and KERN, JENSEN, and DEVANEY, Justices, concur.